IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GREGORY M. CORREIA,                          Case No. 6:14-cv-00600-MA

             Plaintiff,                           OPINION AND ORDER

      v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

             Defendant.

JOHN E. HAAPALA, JR.
401 E. 10th Ave., Suite 240
Eugene, OR 97401

      Attorney for Plaintiff

RONALD K. SILVER
Assistant United States Attorney
District of Oregon
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

ERIN F. HIGHLAND
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 98104
Seattle, WA 98104

      Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Gregory M. Correia seeks judicial review of the final decision of the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-434.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  For the reasons that follow, I reverse the decision of the Commissioner and remand this case for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed an application for DIB on December 20, 2010, alleging disability beginning November 28, 2006 due to fibromyalgia and chronic pain caused by fibromyalgia.

Plaintiff's claims were denied initially and upon reconsideration.  Plaintiff filed a request for a hearing before an administrative law judge (ALJ).  An ALJ held a hearing on March 15, 2013, at which plaintiff appeared with his attorney and testified. A vocational expert, Hanock Livneh, Ph.D., also appeared at the hearing and testified.  On May 1, 2013, the ALJ issued an unfavorable decision.   The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Born in 1959, plaintiff was 47 years old on his alleged onset date.   Plaintiff was 52 years old on the date last insured. Plaintiff has a tenth grade education and has past relevant work as

as an auto mechanic.   Plaintiff also has been self-employed as a locksmith.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520; 416.920. Each step is potentially dispositive.   The claimant bears the burden of proof at steps one through four.   *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).   At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2011. A claimant seeking DIB benefits under Title II must establish disability on or prior to the last date insured.   42 U.S.C. § 416(I)(3); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. At step two, the ALJ found that plaintiff had the following severe impairments:   fibromyalgia, degenerative disc disease, and osteoarthritis.   At step three, the ALJ found that plaintiff's

impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to lift and carry 10 pounds frequently and 20 pounds occasionally; alternate sitting/standing in one hour increments for eight hours in an eight-hour work day without leaving the work station; occasional climbing of ramps/stairs; no climbing of ladders, ropes or scaffolds; occasional stooping, kneeling, crouching and crawling; only occasional overhead reaching bilaterally; and should avoid exposure to hazards such as unprotected heights and dangerous machinery.

At step four, the ALJ found plaintiff is unable to perform any past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as a parking lot attendant, photocopy machine operator, and ticket taker. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from November 28, 2006 through December 31, 2011.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to properly evaluate his testimony; (2) the ALJ failed to properly evaluate the opinion of

4 - OPINION AND ORDER

treating physician Howard Gandler, M.D.; (3) the ALJ erred in
rejecting the lay testimony of his friend Debra Jean Flowers; and
(4) improperly relied upon VE testimony that plaintiff could
alternate between sitting and standing.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if
the Commissioner applied proper legal standards and the findings
are supported by substantial evidence in the record.   42 U.S.C. §
405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).
"Substantial evidence is more than a mere scintilla but less than
a preponderance; it is such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion."  *Hill*, 698 F.3d
at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690.
The court must weigh all the evidence, whether it supports or
detracts from the Commissioner's decision.  *Martinez v. Heckler*,
807 F.2d 771, 772 (9th Cir. 1986).   The Commissioner's decision
must be upheld, even if the evidence is susceptible to more than
one rational interpretation.  *Batson v. Commissioner Soc. Sec.
Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).   If the evidence
supports the Commissioner's conclusion, the Commissioner must be
affirmed; "the court may not substitute its judgment for that of
the Commissioner."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th
Cir. 2001).

I.    **Plaintiff's Credibility**

A.    **Standards**

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects

of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

### B.  Analysis

At the hearing, plaintiff testified that due to his pain, he is unable perform his work as an automotive brake mechanic. Plaintiff testified that he could not go to work about half the time.   Plaintiff indicated that he was limping and had difficulty concentrating.   Plaintiff described his fibromyalgia as a constant full body muscle ache.   Plaintiff described stiffness in his elbows, knees, shoulders, neck and hips.   Plaintiff testified that he takes Tramadol for pain and Trazodone for sleep.   Tr. 41.

Plaintiff testified that he lives alone in a manufactured home, and is able to take his dog for a walk five days per week. Plaintiff stated that he walks his dog to a dog park 15 minutes from his home, then sits while his dog runs around, then walks 15 minutes back to his home.   Tr. 42.   Plaintiff stated that when he was working, every move hurt.

Plaintiff described that in a typical day, he wakes up at 8:30 or 9:30 a.m., makes coffee, and takes a pain pill.   Plaintiff described that he eats lunch between 11 a.m. and noon, then lies on the couch.   In the afternoon, plaintiff stated he walks the dog, then performs light chores, such as running the dishwasher or laundry.   Plaintiff stated that he spends most of his time lying on the couch watching television.   Plaintiff testified that he has

trouble staying asleep at night because he frequently wakes to reposition himself.  Tr. 47.

Plaintiff stated that he does not have hobbies and no longer visits friends or family.  Tr. 45.  Plaintiff described that he has arthritis in a couple of fingers, but it does not prevent him from doing anything.  Tr. 52.

In an Adult Function Report dated February 24, 2011, plaintiff reported that he is unable to work due to pain and fatigue.  Tr. 184.  Plaintiff reported being able to prepare simple meals, such as sandwiches and frozen dinners, one or two times per day, for 30 minutes each time.  Plaintiff described performing simple household chores, such as sweeping, laundry and vacuuming for two hours, twice a week.  Plaintiff reported that he is able to drive and shops in stores twice a week for 30 minutes each time.  Plaintiff described that he is no longer able to engage in activities such as kayaking, roller skating, or dirt bike riding.  In that report, plaintiff checked that his conditions affected his abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, and concentrate.  Tr. 189.  Plaintiff reported that any physical activity of longer than 30 minutes leaves him sore and tired and that his pain makes it difficult to concentrate.  Plaintiff also indicated that stress exacerbates his pain and that his pain is getting worse.  Tr. 190.

In the decision, the ALJ found that plaintiff's allegations that he can no longer perform extensive physical activities and his former work as an automotive brake mechanic credible, however, the ALJ found his statements concerning the intensity, persistence and limiting effects of his symptoms not entirely credible. The ALJ discounted plaintiff's testimony for several reasons.

First, the ALJ discounted his testimony because his allegations are inconsistent with his ability to perform recreational activities. In this regard, the ALJ noted that plaintiff's alleged onset date is November 2006. The ALJ discussed that treatment records in August 2006 indicate that plaintiff reported to one physician that despite allegations of low back pain, he "continues to be able to perform recreational sports, including kayaking and rafting." Tr. 226. As the ALJ accurately noted, plaintiff reported increased pain in December of 2006, and that his sleep was improved with Nortriptyline. However, as the ALJ correctly indicated, the medical record does not reflect a dramatic change in plaintiff's condition between August 2006 and his alleged onset date of November 2006 to explain how plaintiff could be able to kayak and raft in August, but be disabled in November 2006. Based on this substantial evidence, the ALJ appropriately concluded that plaintiff's pain may have prevented him from performing his work as an auto mechanic in 2006, but did not preclude lighter forms of work at that time. Thus, I conclude

that the ALJ's finding that plaintiff's activities in 2006 were inconsistent with his allegations of disabling pain due to his fibromyalgia is wholly supported by the record.

Second, the ALJ discounted plaintiff's credibility because there are no treatment records between February 2007 and June 2008. An unexplained or inadequately explained gap in treatment can be an appropriate basis for discounting a claimant's testimony. *Burch*, 400 F.3d at 681. As the ALJ noted, there are no records from February of 2007 until June of 2008, when plaintiff established care with Howard Gandler, M.D., his treating rheumatologist. In his reply brief, plaintiff contends that the gap in treatment is due to his lack of insurance. A claimant's failure to seek treatment due to an inability to pay may not form the basis of an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Dr. Gandler's records indicate that plaintiff is self-pay, and the medical records from 2006 and early 2007 indicate that plaintiff had insurance through Kaiser Permanente. Tr. 226. Additionally, the record shows that plaintiff ceased working as an auto mechanic in late 2006 and that he also separated from his wife in 2006, thus losing two potential sources of insurance. Tr. 150, 186.

While plaintiff now contends that his 16-month gap in treatment is due to his lack of insurance, plaintiff's reasoning is not supported by substantial evidence in the medical record or his

hearing testimony.    Plaintiff did not attribute his gap in treatment to his lack of insurance when he sought treatment from Dr. Gandler in June of 2008.  Indeed, plaintiff's lack of insurance did not prevent him from establishing care with Dr. Gandler. Furthermore, as the ALJ accurately noted, at his initial examination, Dr. Gandler determined that plaintiff did not meet the diagnostic criteria for fibromyalgia.  Tr. 251.  Dr. Gandler later opined that plaintiff's fibromyalgia did not become disabling until November of 2010.  Tr. 284.  Yet, that date is some *four years* after plaintiff's alleged onset date.  And, although Dr. Gandler indicates that plaintiff has limited financial means, Dr. Gandler offers that plaintiff's lack of insurance prevents him from obtaining more expensive medications, such as Lyrica, not as an explanation of plaintiff's 16-month treatment gap.  Tr. 282.  This evidence must be viewed in light of plaintiff's report that he was able to engage in recreational sports in August 2006, which is wholly supported by substantial evidence.  Therefore, based on the record before me, I conclude that the ALJ reasonably inferred from plaintiff's unexplained gap in treatment from 2007 to 2008 that his chronic pain from fibromyalgia was not as severe during that time as plaintiff alleged, and appropriately discounted plaintiff's testimony on this basis.  Because the ALJ's interpretation of this evidence is rational and supported by substantial evidence, it will

not be disturbed. *Gahnim*, 763 F.3d at 1160 (noting that reasonable inferences must be upheld).

Third, the ALJ discounted plaintiff's testimony because the degree of limitation he alleges is inconsistent with his activities of daily living. An ALJ may discredit a claimant where the claimant engages in daily activities that are inconsistent with the alleged symptoms, or where the claimant reports participating in activities transferrable to a work setting. *Molina*, 764 F.3d at 1113. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *See Turner v. Commissioner Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010); *Valentine*, 574 F.3d at 693. The ALJ noted that plaintiff's abilities to drive, shop, perform household tasks, and walk his dog indicate that he is capable of performing lighter types of tasks. Tr. 20.

But in this case, none of the activities described by plaintiff after June 2008 (vacuuming, dusting, laundry) exceed his alleged limitations. For example, plaintiff described walking his dog for 15 minutes, sitting to rest, then walking again. Indeed, plaintiff alleges fatigue and pain which prevent him from performing prolonged activities. There is no indication that the limited activities performed by plaintiff either comprise a "substantial" portion of his day, or are "transferrable" to a work

environment. *Gahnim*, 763 F.3d at 1165. Thus, I conclude that the ALJ's adverse credibility determination on this basis is not supported by substantial evidence.

Fourth, the ALJ discounted plaintiff's testimony because he was able to work as a locksmith part-time after his alleged onset date, which was inconsistent with his hearing testimony that his job as locksmith was simply a hobby. The ALJ noted that in April of 2010, plaintiff reported to Dr. Gandler that he was working seven to 10 jobs each week, and that in February 2011, plaintiff indicated that his worsening pain and fatigue reduced the number of locksmith jobs he was capable of performing. Tr. 20. As the ALJ accurately noted, in his Work History Report, plaintiff indicated that from 2007 to 2009, he was working about 20 hours a month. Tr. 163.

I conclude the ALJ's erred in discounting plaintiff's testimony on this basis. Working 20 hours a month roughly translates to only five hours a week, which some – like plaintiff – may consider a hobby. Moreover, plaintiff's Work History Report is consistent with his reports to Dr. Gandler. Tr. 238, 242. Plaintiff's locksmith work at the level he performed it does not exceed plaintiff's self-described functional limitations after June 2008. Plaintiff's allegations of increasing pain and fatigue as his fibromyalgia progressed are consistent with his allegations that he stopped working as an auto mechanic (allegations upheld by

13 – OPINION AND ORDER

the ALJ) and decreased the type and amount of work he performed as a locksmith.  Therefore, based upon my careful review of the record as a whole, I conclude the ALJ erred in discounting plaintiff's credibility based on plaintiff's ability to work brief periods as a locksmith.

Finally, the ALJ discredited plaintiff because the severity of his symptoms are inconsistent with the medical record.  On May 9, 2011, Dr. Ogisu conducted a comprehensive musculoskeletal examination.  Tr. 262.  Following his examination, Dr. Ogisu opined that plaintiff could sit for at least half of an 8 hour day, but less than 6 hours; could stand and walk for at least half of an 8 hour day, but less than 6 hours; lift and carry 20 pounds occasionally; with no handling restrictions except that he should minimize repetitive, sustained, and forceful activities.  Tr. 264. The ALJ gave Dr. Ogisu's opinion significant weight.  Tr. 21.

In this regard, the ALJ noted that plaintiff reported constant pain and fatigue to Dr. Ogisu.  However, that examination noted that plaintiff had a normal gait, could perform a deep knee bend and rise without support, grip strength was full, and manual dexterity was good.  Dr. Ogisu found plaintiff had intact sensation, and full strength in the upper body, with the exception of his right shoulders and hips bilaterally.  Dr. Ogisu diagnosed fibromyalgia with 16 of 18 tender points positive, and osteoarthritis of the hands that was asymptomatic. Dr. Ogisu noted

14 - OPINION AND ORDER

that plaintiff reported moderate pain.  Tr. 264.  The ALJ found
that plaintiff's ability to perform some household tasks and the
medical evidence from Dr. Ogisu undermined plaintiff's allegations
of total disability.

Examining the record carefully, I cannot conclude that the
medical evidence from Dr. Ogisu provides clear and convincing
support for the adverse credibility determination.  To be sure,
plaintiff alleges that he becomes fatigued with activities
performed for longer than 30 minutes.  Dr. Ogisu's opinion does not
reflect the duration his examination, or whether plaintiff could
perform any of the examination activities repeatedly without pain
or fatigue.  And, Dr. Ogisu did indicate that plaintiff reported
moderate pain.  Tr. 264.  Thus, I conclude that the inconsistency
between plaintiff's allegations and Dr. Ogisu's report is not a
clear and convincing reason to discount plaintiff's testimony on
the record before me.

In summary, three of the reasons supplied by the ALJ for
discrediting plaintiff are erroneous, and two are supported by
substantial evidence.  Although this court may uphold a negative
credibility assessment even if all of the ALJ's reasons are not
upheld, I cannot conclude when viewing the record *in toto*, that the
ALJ's errors are harmless.  *See Carmickle*, 533 F.3d at 1162 (court
must consider whether ALJ's reliance on erroneous reasons in
negative credibility assessment is harmless).  Although the ALJ's

conclusions with respect to plaintiff's ability to engage in recreational activities and 16 month gap in treatment are supported by substantial evidence, these finding relate to 2006 to 2008, and are not inconsistent with other record evidence that plaintiff's fibromyalgia is deteriorating. Additionally, the ALJ did not cite any evidence of symptom exaggeration nor did my careful review of the record reveal any. Accordingly, I conclude that the ALJ's reasoning falls short of clear and convincing, and that the ALJ has erred.

## II. **Medical Evidence**

### A. **Standards**

Generally, more weight is given to the opinion of a physician who treats the claimant than to that of a physician who merely examines the claimant. *Carmickle,* 533 F.3d at 1164; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Even if a treating physician's opinion is contradicted, the ALJ may not simply disregard it. The ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to afford the treating physician's medical opinion. *Orn*, 495 F.3d at 631; 20 C.F.R. § 404.1527(c)(2). These factors include the "[l]ength of the treatment relationship and the frequency of

16 - OPINION AND ORDER

examination" by the treating physician, the "[n]ature and extent of the treatment relationship" between the patient and the treating physician, the "[s]upportability" of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole. 20 C.F.R. § 404.1527(c)(2)-(6). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164.

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti*, 533 F.3d at 1040; *Andrews v. Shalala*, 53 F.3d 1035, 1034 (9th Cir. 1995).

**B.    Analysis - Howard Gandler, M.D.**

Plaintiff argues that the ALJ erred in failing to give the opinions Dr. Gandler controlling weight.    Dr. Gandler is plaintiff's treating rheumatologist and began treating plaintiff in June 2008.    Dr. Gandler provided several opinions concerning

plaintiff's abilities.[1]    Dr. Gandler provided a detailed
description of plaintiff's condition on June 27, 2008.  Tr. 251.
In that evaluation, Dr. Gandler described that plaintiff's cervical
motion is mildly restricted but lumbosacral extension and flexion
were near full.   At that time, plaintiff was reporting pain in the
upper back, but not in the shoulders.   Dr. Gandler indicated
plaintiff had positive fibromyalgia tender points in the trapezius,
scapular, gluteal, anterior cervical and lateral elbow points.  Dr.
Gandler noted that plaintiff had chronic pain and poor sleep, but
did not meet the diagnostic criteria for fibromyalgia, but his
"problem is almost certainly in the same pathophysiological
spectrum as fibromyalgia."  Tr. 252.

In a letter dated September 30, 2009, Dr. Gandler opined that
plaintiff's chronic pain "limits his ability to work and to engage
in normal non[-]work activities."  Tr. 241.   Dr. Gandler ordered x-
rays to test for osteoarthritis and prescribed Nortriptyline, and
recommended physical therapy in the form of water exercises in a
heated pool.  Tr. 252.

On August 29, 2011, Dr. Gandler provided an opinion
accompanying a "Spinal Impairment Questionnaire" supplied by
plaintiff's attorney.  Tr. 273-79.   In this letter, Dr. Gandler

----

[1]Dr. Gandler provided typewritten opinion letters dated
August 29, 2011, January 25, 2013, and August 1, 2013.  Tr. 280,
293, 317.  However, the bulk of Dr. Gandler's  treatment notes
are handwritten, brief, and difficult to interpret.

opined that plaintiff's pain and fatigue due to fibromyalgia are "bad enough to be disabling." Tr. 280. Dr. Gandler indicated that plaintiff's tender point examination showed 16 of 18 points positive for fibromyalgia. Dr. Gandler noted that plaintiff's primary symptoms are severe pain, fatigue, poor sleep, as well as nausea and difficulty concentrating due to his pain. Tr. 280. Dr. Gandler indicated that plaintiff has aching in all affected areas, with occasional painful spasms in the hands and feet. Dr. Gandler noted that plaintiff reports his pain worsens with any activity, and that plaintiff's pain is not fully relieved by medication. Dr. Gandler indicated that plaintiff takes Tramadol four or five times per day, and that other medications have caused unpleasant side effects. Dr. Gandler stated that plaintiff is uninsured and cannot afford other medications designed to specifically treat fibromyalgia, such as Lyrica. Tr. 282.

In his August 29, 2011 opinion letter, Dr. Gandler described plaintiff's functional limitations as follows: plaintiff can sit, stand and walk for less than one hour and is "incapable of performing any useful work;" needs to lie down during the day and change positions frequently; can lift and carry five pounds frequently; cannot push or pull; should avoid wetness, humidity, temperature changes, walking on stairs, inclines, bending and stooping; and would be absent from work more than three days per month. Tr. 281-83. Finally, Dr. Gandler opined that plaintiff has

had all of these symptoms and limitations to this degree since November 2010, and to a lesser degree since 2005, but that plaintiff's symptoms have progressively deteriorated.  Tr. 285.

In a letter dated January 25, 2013, Dr. Gandler opined that plaintiff had the same restrictions described in his August 29, 2011 opinion.  Tr. 292-300.

In the decision, the ALJ gave the opinions of Dr. Gandler "little weight" because the opinions were largely based on plaintiff's self-reports, are inconsistent with treatment notes, and are contradicted by plaintiff's activities of daily living. Tr. 21.  Dr. Gandler's opinions were contradicted by examining physician, Tatsuro Ogisu, M.D., and therefore, the ALJ was required to provide specific and legitimate reasons to discount Dr. Gandler's opinions.

An ALJ may discount medical opinions that are based to a large extent on a claimant's self-reports that have been properly discounted as incredible.  *Tommasetti*, 533 F.3d at 1041.  As discussed at length above, the ALJ failed to provide clear and convincing reasons to discount plaintiff's credibility. Accordingly, the ALJ's reasoning on this basis is not supported.

A conflict between treatment notes and a treating physician's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider. *Molina*, 674 F.3d at 1111-12; *Valentine*, 574 F.3d at 692-93.  Here,

20 - OPINION AND ORDER

the ALJ indicated that limitations described by Dr. Gandler are inconsistent with his own treatment record. The ALJ's findings in this regard are supported by substantial evidence.

For example, Dr. Gandler's August 31, 2009 treatment note indicates that plaintiff reported that he experienced two flares of his symptoms, but that Tramadol was working "reasonably well the rest of the time." Tr. 242; *see also* Tr. 244 (plaintiff reports on November 18, 2008, Tramadol was helping with the pain). The ALJ also noted in April 2010, Dr. Gandler's notes reflect that plaintiff reported sleeping "pretty good." Tr. 238. To be sure, several of Dr. Gandler's treatment notes show that plaintiff reported sleeping well. Tr. 244, 249. In a December 21, 2009 treatment note, Dr. Gandler indicated plaintiff was sleeping better and that plaintiff was not using Ambien. Tr. 239. Similarly, Dr. Gandler's October 11, 2010 treatment note indicates plaintiff's sleep was usually okay. Tr. 237. As the ALJ correctly indicated, Dr. Gandler's treatment notes are inconsistent with his opinions that plaintiff suffers from poor sleep. Additionally, as the ALJ correctly indicated, Dr. Gandler's treatment notes contain no mention of difficulties with attention or concentration, or that Dr. Gandler performed any objective testing of plaintiff's attention or concentration, which is contrary to Dr. Gandler's opinions that plaintiff suffers severe impairments with

concentration and attention. Tr. 21, 282. Accordingly, the ALJ appropriately discounted Dr. Gandler's opinions on this basis.

Lastly, the ALJ discounted Dr. Gandler's opinions because they are inconsistent with plaintiff's daily activities. Such a conflict may justify rejecting a treating provider's opinion. *See Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999)(considering an inconsistency between a treating physician's opinion and a claimant's daily activities a specific and legitimate reason to discount the treating physician's opinion). Here, the ALJ found that Dr. Gandler's opinion that plaintiff can sit and be on his feet for a total of less than two hours in a 13 hour day inconsistent with plaintiff's self-described daily activities. As discussed above, after reviewing the record as a whole, I conclude that after June of 2008, the record does not indicate that plaintiff has been engaging in activities of daily living exceed the limitations described by Dr. Gandler. Although plaintiff stated being active for four to six hours before needing to rest in a 2011 Pain and Fatigue Questionnaire, in that same questionnaire, he also reported needing to take two or three naps a day and that he needs to rest if he walks his dog for 30 minutes. Tr. 192. Plaintiff also described that he lies down most of the day, watching television, and that when he takes his dog for a walk, he rests after 15 minutes. There is no activity that plaintiff described in his Function Report that

takes longer than 30 minutes to perform. Tr. 184-191. Accordingly, I conclude that the ALJ erred in discounting Dr. Gandler's opinion on this basis.

In sum, the ALJ has provided one reason that is supported by substantial evidence to reject the opinion of treating physician Dr. Gandler. Although the ALJ discussed Dr. Ogisu's opinion in the decision, the ALJ did not specifically reject Dr. Gandler's opinion based on Dr. Ogisu's conflicting physical one-time examination results. While this may support discounting Dr. Gandler's opinion, the court is constrained to review the reasons the ALJ asserts. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Given plaintiff's fibromyalgia, the court is unwilling to supplant Dr. Gandler's longitudinal record of treating plaintiff with that of Dr. Ogisu absent a more thorough discussion of the conflicting medical evidence and the factors in 20 C.F.R. § 404.1527(c)(2)-(6) and Social Security Ruling 12-2p, *available at* 2012 WL 3104869. Therefore, based upon my careful review, I cannot conclude that the inconsistencies between Dr. Gandler's notes and his opinions alone amount to a specific and legitimate reason warranting the rejection of a treating physician's opinion on the record before me. Therefore, the ALJ has erred.

III. **Lay Testimony**

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which

23 - OPINION AND ORDER

the ALJ must take into account.  *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so.  *Valentine*, 574 F.3d at 694.

Plaintiff's friend, Debra Jean Flowers, submitted a Third Party Adult Function Report dated March 1, 2011.  Tr. 193-200. Ms. Flowers indicated that she sees plaintiff two or three times a week and that plaintiff is in constant pain.  Tr. 193.  Ms. Flowers reports that plaintiff has difficulty sleeping due to discomfort, and that plaintiff can prepare simple meals, walk his dog for one-eighth of a mile, and can drive and shop for about 30 minutes before needing to rest.  Tr. 195-96.  Ms. Flowers indicated that plaintiff can vacuum or clean his trailer for about one hour, two times per week, stopping for breaks.  Ms. Flowers reported that plaintiff can lift five pounds, can stand for four or five minutes, sit for 20 minutes, can climb four or five stairs, and cannot squat or kneel.  Tr. 198.  Ms. Flowers also indicated that plaintiff has no problems with attention or concentration.  Tr. 198.

Plaintiff contends that the ALJ discounted Ms. Flowers' testimony for the same reasons that the ALJ rejected the plaintiff's testimony and Dr. Gandler's opinion.  I disagree in part.

24 - OPINION AND ORDER

The ALJ accurately discussed the limitations and information provided by Ms. Flowers in the decision, and found her not fully credible.  The ALJ provided two reasons: (1) Ms. Flowers' reports of plaintiff's chronic pain and fatigue are undermined by plaintiff's inconsistent testimony, and (2) Ms. Flowers' reports that plaintiff cannot lift more than five pounds, bend or squat are contradicted by objective medical evidence.  As discussed above, the ALJ erred in discrediting plaintiff, and thus, the ALJ's first reason cannot suffice to reject Ms. Flowers's testimony.  The ALJ's second reason, however, is sufficient. *See Bayliss*, 427 F.3d at 1218 (inconsistency with medical evidence a germane reason for rejecting lay testimony).  Here, the ALJ specifically discussed that Ms. Flowers' testimony that plaintiff cannot lift more than five pounds, bend or squat was contradicted by Dr. Ogisu's examination finding that plaintiff could rise from a squat without difficulty and had full strength in his upper extremities.  Tr. 263.  In the decision, the ALJ gave Dr. Ogisu's opinion significant weight.  The ALJ discussed specific portions of Ms. Flowers' testimony that conflict with Dr. Ogisu's findings, and thus, the ALJ's reasoning is germane to Ms. Flowers.  Although plaintiff contends that Dr. Ogisu's examination fails to accurately describe plaintiff's ongoing fibromyalgia symptoms, he did not directly challenge the "significant weight" the ALJ accorded Dr. Ogisu's opinion.  Therefore, I conclude the ALJ did not err in discrediting

Ms. Flowers' testimony because it was inconsistent with medical evidence. *Bayliss*, 427 F.3d at 1218.

## IV.    RFC and VE Testimony

Because I have identified errors that may impact plaintiff's RFC, I decline to address plaintiff's remaining issues concerning the VE testimony and the sit/stand option provided in the RFC.

## V.    Credit As True

When the ALJ erroneously rejects testimony, the court must remand for a calculation of benefits if:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020. If those three criteria are met, the court may only remand for further proceedings if "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021. If so, the court may exercise its discretion and remand the case for further administrative proceedings. *Id.* at 1021; *Connett*, 340 F.3d at 876.

As discussed above, the ALJ erred in discounting plaintiff's testimony and in evaluating the opinions of Dr. Gandler. Plaintiff argues that when the court credits as true Dr. Gandler's opinion that plaintiff would be absent three days a month or more, there is

26 - OPINION AND ORDER

sufficient information in the record from which the ALJ must find that plaintiff is disabled.

On this record, however, there remain outstanding issues to be resolved. And, I have serious doubts as to whether plaintiff is disabled, most critically, from his alleged onset date. To be sure, as discussed above, the ALJ's determination with respect to plaintiff's activities in 2006 and the 16-month gap in treatment from February 2007 through June 2008 were wholly supported by substantial evidence in the record. Additionally, as noted above, Dr. Gandler opined that plaintiff's symptoms did not become severe until November 2010, which is four years after plaintiff's alleged onset date. Moreover, portions of Dr. Gandler's opinions are not supported by his own treatment notes. Likewise, Dr. Ogisu's unchallenged, one-time examination assessed far greater physical capabilities than Dr. Gandler. Therefore, viewing the record as a whole, I have serious doubts that plaintiff has been disabled since November 28, 2006, and there are outstanding issues that must be resolved before a disability determination can be made.

Based on the foregoing, I exercise discretion under *Connett* and conclude a remand for further proceedings consistent with this Opinion and Order is required to permit the ALJ: (1) to reconsider the opinion Dr. Gandler, re-contacting Dr. Gandler if necessary, and reevaluate the medical testimony; (2) to reconsider plaintiff's testimony; (3) to consider whether any new findings made by the ALJ

27 - OPINION AND ORDER

alter the evaluation of plaintiff's RFC or affect the decision as to whether plaintiff is capable of performing other work that exists in significant numbers in the national economy, with assistance of a vocational expert if necessary; and (4) if plaintiff is found to be disabled, the ALJ must determine plaintiff's disability onset date.

### CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying benefits to plaintiff is REVERSED and this proceeding is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this _20_ day of APRIL, 2015.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge